431 A.2d 901

**COMMONWEALTH of Pennsylvania,**

v.

**Melvin Henry ROBINSON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1979.

Decided July 2, 1981.

---

Thomas P. Ruane, Jr., Public Defender, Uniontown, for appellant.

Gerald R. Solomon, Dist. Atty., Uniontown, for appellee.

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, WILKINSON, FLAHERTY, and KAUFFMAN, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a judgment of sentence of life imprisonment imposed on a jury verdict of guilty of murder of the first degree. At oral argument, heard on March 9, 1979, it was revealed that penal authorities had committed appellant to a mental institution after conviction. By order dated March 27, 1979, this Court remanded the record of the Court of Common Pleas of Fayette County for an evidentiary hearing on the competency of appellant at the time of trial as well as sentencing. On remand, the court of common pleas considered appellant's competency only at the time of trial. On August 16, 1979, this Court remanded the record for a determination of appellant's competency at the time of sentencing. That determination was made on March 30, 1981, and this matter is now ready for decision.

The incident giving rise to the present prosecution and conviction occurred outside Uniontown, Pennsylvania, on the evening of January 27, 1977. The victim, Gerald McGifford, died after he had been shot in the head at close range. Uniontown Police found the victim's body on the night of the shooting after Barbara Maise, eyewitness and girlfriend of the victim, had reported the incident. Appellant was located the following evening in Pittsburgh, taken into police custody, and charged with criminal homicide, including murder of the first degree. Appellant gave police a statement.

Appellant was tried before a jury during the week of June 6, 1977. At trial, the Commonwealth sought to establish an intentional killing primarily through the testimony of eyewitness Maise. Maise testified that on the evening of the shooting she, appellant, and the victim had been riding in her car in the Uniontown area. Maise stated that, before the shooting, while the car was stopped and the victim was out of the car, appellant asked her, "Do you want me to hurt that punk?" According to Maise, the three later stopped the car in front of a private residence where appellant was

going to borrow money. She testified that, before going into the house, appellant shot the victim. Maise testified that, after the shooting,

"Melvin [(appellant)] told me to get in the back seat and lay down and shut my mouth, or I would get the same thing—so I got in the back seat, and I started asking him, why he did it, and he kept saying 'I am the boss. I am the devil.' He said, 'Gerald thought he was bad, but I just showed him who was boss' . . . ."

Maise testified that, after appellant disposed of the victim's body, he forced her to engage in sexual intercourse.

The Commonwealth also introduced the statement that appellant had given police. In the statement, appellant told police: "Gerald [(the victim)] and I got into an argument about the way Gerald was beating and treating [Maise]. He looked like he had something in his hand and I had a gun I had taken from my landlady. I shot Gerald twice. * * *"

Appellant took the stand and presented a theory of self-defense. Appellant stated that, while sitting in the front seat of Maise's car, he and the victim had argued about the victim's habit of striking his girlfriend Maise. According to appellant, the victim "got a little peeved at me for telling him about his woman . . ." and "proceeded to go into his pocket." Appellant stated that he then shot the victim because he believed the victim was carrying a knife. Appellant (and another defense witness) also stated that he had been drinking throughout the day of the shooting.

The court instructed the jury on murder of the first and third degrees, as well as heat-of-passion voluntary manslaughter. Additionally, the court charged the jury on self-defense and voluntary intoxication. On June 10, 1977, the jury returned its verdict of guilty of murder of the first degree. Shortly thereafter appellant was admitted to Farview State Hospital for psychiatric evaluation. On October 27, 1977, a staff physician deemed appellant competent to be sentenced. On January 13, 1978, following the denial of written post-verdict motions, the court imposed sentence of

life imprisonment. This appeal followed, as did the evidentiary hearings on appellant's competency.

At its hearing on appellant's competency to be tried, the court of common pleas heard defense testimony of two psychiatrists who had examined appellant in late June of 1977, shortly after appellant's trial. Although the doctors believed that appellant was suffering from mental illness, neither could render an opinion on appellant's competency to stand trial. On cross-examination both doctors indicated that appellant's condition could have been the result of his realization that he faced a sentence of life imprisonment. At the hearing on competency at sentencing, appellant offered no medical evidence. Instead, he testified that he could not recall the sentencing proceedings. Appellant claimed that he had been taking medication to such an extent as to affect his competency.

The hearing judge, who had presided over appellant's trial and had imposed sentence, found appellant to have been competent at both proceedings. In so holding, the court recalled appellant's ability to respond easily to questions at the proceedings and relied on the report of the Farview staff psychiatrist who, after examination, had deemed appellant competent.

We are now satisfied that appellant's challenge to his competency cannot prevail. This Court has stated:

> " '[T]he mental competence of an accused must be regarded as an absolute and basic condition of a fair trial.' *Commonwealth v. Bruno*, 435 Pa. 200, 205 n.1, 255 A.2d 519, 522 n.1 (1969). '[T]he conviction of an accused person while he is legally incompetent violates due process . . . and . . . state procedures must be adequate to protect this right.' *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838 [15 L.Ed.2d 815] (1966); See *Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454 (1935)."

*Commonwealth v. Marshall*, 456 Pa. 313, 319, 318 A.2d 724, 727 (1974). So too, a court "should not proceed with sentence unless the defendant is mentally competent. Otherwise his right of allocution, *Green v. United States*, 365 U.S.

301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961), would be meaningless." *Saddler v. United States,* 531 F.2d 83, 86 (2d Cir. 1976). See *Commonwealth ex rel. Hilberry v. Maroney,* 424 Pa. 493, 495, 227 A.2d 159, 160 (1967) ("if [defendant] lost his senses subsequent to the plea [of guilty] but before the judgment, the sentence could not validly be imposed until after his recovery"). See generally Pa.R.Crim.Proc 1405(a) and *Commonwealth v. Knighton,* 490 Pa. 16, 415 A.2d 9 (1980) (right of allocution). Accordingly, section 402(a) of the Mental Health Procedures Act provides:

"Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues."

Act of July 9, 1976, P.L. 817, 50 P.S. § 7402(a) (Supp.1980). See *Commonwealth ex rel. Hilberry v. Maroney,* supra.

However, "[i]t is . . . well established the person asserting mental incompetence to stand trial has the burden of proving incompetency by a preponderance of the evidence." *Commonwealth v. Kennedy,* 451 Pa. 483, 487, 305 A.2d 890, 892 (1973). And "[a] finding of competency by the trial court will not be reversed unless it is unsupported by the record." *Commonwealth v. Tyson,* 485 Pa. 344, 349, 402 A.2d 995, 997 (1979).

■ Here, in finding appellant competent, the court applied proper legal standards as to both the test of competency and the burden of proof. There is now ample basis of record to sustain the trial court's rejection of appellant's challenge. Appellant did not present medical testimony in support of his position and the court rejected appellant's own testimony. The determinations of competency may not be disturbed. See *Commonwealth v. Tyson,* supra.

Appellant's remaining contentions include: (1) that the evidence is insufficient to support a verdict of murder of the first degree; (2) that the Commonwealth's eyewitness Barbara Maise was incompetent to testify; (3) that pre-trial

publicity mandated a change of venue; and (4) that the percentage of blacks on the array from which his jury was selected was disproportionate to the percentage of blacks in the community. None of these contentions warrants relief.

In challenging the verdict of guilty of murder of the first degree, appellant contends that the defense testimony establishes that he acted in self-defense and, alternatively, that he was sufficiently intoxicated to preclude a necessary finding of specific intent to kill. However, in reviewing a challenge to the sufficiency of the evidence, it is not our function to determine the facts anew. "It is a basic tenet of our system of jurisprudence that issues of credibility are properly left to the trier of fact for resolution." *Commonwealth v. Whack*, 482 Pa. 137, 140, 393 A.2d 417, 419 (1978). "The fact-finder is free to believe all, part, or none of the evidence." *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975). Rather, to determine if the fact-finder's verdict was justified, we must review all of the evidence admitted at trial in the light most favorable to the Commonwealth, the verdict-winner, and draw all reasonable inferences. *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976). A review of the record from this perspective leaves no doubt that the evidence is sufficient. The jury reasonably could choose to credit the version of the offense presented by the Commonwealth's eyewitness, wholly reject appellant's claims of self-defense and intoxication, and conclude that appellant intentionally killed the victim.

Appellant's challenge to the competency of eyewitness Maise is based on "a number of contradicting statements" which the witness made at trial. For example, appellant cites the witness's testimony, on cross-examination, that no evidence of sperm was found by the physician who had examined the witness after the alleged killing and sexual assault. According to appellant, "this major contradiction is evidence of the witness's incompetency and inability to tell the truth." However, at no time during the course

of trial did appellant challenge the competency of eyewitness Maise. Recently, in a similar setting, this Court unanimously held:

"Apparently appellant would have the court make a sua sponte inquiry into [the witness's] competency on the basis of [the witness's] 'agressive tendencies,' for at no previous time did appellant raise any question concerning [the witness's] competency as a witness. In accordance with *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), and other cases requiring that the parties to a controversy properly preserve issues, see, e. g., *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975) and *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), we are of the view that on this record appellant was obliged at trial to put the competency of [the witness] in issue and, appellant not having done so, the issue is not preserved for appellate review."

*Commonwealth v. Harris*, 492 Pa. 389, 395 n.3, 424 A.2d 1245, 1249 n.3 (1981). In accord with *Harris* we conclude that appellant cannot prevail on his claim that eyewitness Maise was incompetent to testify.

Equally unsuccessful is appellant's contention that venue should have been changed because of pre-trial publicity. Wholly lacking here is any evidence that prejudicial material was widely disseminated at the time of trial. See, e. g., *Commonwealth v. Richardson*, 476 Pa. 571, 586–87, 383 A.2d 510, 518 (1978); *Commonwealth v. Hoss*, 469 Pa. 195, 202, 364 A.2d 1335, 1339 (1976). So too, there is no merit to appellant's objection to the composition of the array from which his jury was selected. Appellant has failed to establish any systematic exclusion from the venire. See *Commonwealth v. Harris*, supra, 492 Pa. at 394, 424 at 1247.

Judgment of sentence affirmed.

EAGEN, former C. J., and MANDERINO, former J., did not participate in the decision of this case.