500 A.2d 825

**COMMONWEALTH of Pennsylvania**

v.

**Alonzo POLK, Appellant.**

Superior Court of Pennsylvania.

Submitted May 23, 1985.

Filed Oct. 4, 1985.

Reargument Denied Dec. 5, 1985.

266

William P. James, Philadelphia, for appellant.

Ann A. Nevel, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence imposed on a conviction for rape. We affirm in part and remand in part.

The facts as accepted by the trial court indicate the following: on June 17, 1982, the victim, Lynise Parker, left her apartment to take her first walk outside after undergoing a biopsy and hysterectomy a week and one-half earlier. She still had sutures, both external and inside her vagina. The victim was walking with her thirteen year old daughter in the vicinity of her apartment, when she encountered appellant, Alonzo Polk, whom she had known for thirteen years "like a brother". The victim was angry with Polk because she believed that he had entered her apartment without her permission while she was in the hospital. Polk and the victim began to argue. Polk pushed the victim's

daughter and, after a scuffle between them, the victim threw a bottle at him. Polk ducked out of the way of the bottle and pushed the victim with both hands, whereupon the victim fainted. Polk and a neighbor then carried the victim to her second floor apartment. When she revived, she was lying on her back on her bed. The neighbor was gone and Polk was sitting on her bed holding her face in his hands. The victim was having difficulty breathing. Polk got on top of the victim, pulled up her slip, pulled down her underpants, pulled down his zipper, exposed his penis, and inserted it slightly into her vagina. Polk caused the victim such pain that she screamed and threw herself and him onto the floor. Shortly thereafter, while the victim was still on the floor, hysterical and crying, and trying to crawl away from Polk, her son, Thurmon Parker, entered the apartment through the second floor window because the front door had been locked. Thurmon Parker then admitted the paramedics and police who were awaiting entry outside the front door. Officer William Borbridge entered the room and noted that the victim was lying on the floor, hysterical, with her slip pulled up around her waist and her underpants pulled down. He also noted that it was appellant's presence in the room that was causing her hysteria. She was attempting to crawl away from Polk even though the police and rescue personnel were present. After the victim told Officer Borbridge what happened, the officer arrested Polk.

Following a bench trial, appellant was found guilty on charges of rape, simple assault, recklessly endangering another person, indecent assault and indecent exposure. Post-verdict motions were argued and denied. Polk was subsequently sentenced to a term of incarceration of not less than two and one half nor more than ten years on the rape conviction. Sentence was suspended as to the remaining charges. No motion to modify or reconsider sentence was filed. This timely appeal followed, filed by appellant pro se. Present counsel was appointed to represent Polk on appeal. We note that Polk was represented by different counsel at trial and post-trial stages.

Appellant contends initially that the testimony presented by the Commonwealth is against the weight of the evidence and that a new trial should be granted. While the appellant concedes that the evidence is facially sufficient to sustain the conviction, he contends nevertheless that the testimony presented by the Commonwealth was inherently unreliable.

The standard of appellate review where it is alleged that a verdict is contrary to the weight of the evidence is clearly set out in *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984):

> Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion. (Citations omitted). The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

Although appellant acknowledges that it is the province of the trier of fact to pass upon the credibility of the witnesses and the weight to be accorded the evidence produced, *Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981); *Commonwealth v. Robinson*, 494 Pa. 372, 431 A.2d 901 (1981); *Commonwealth v. Hayes*, 314 Pa.Super. 1121, 460 A.2d 791 (1983), he nevertheless argues that the findings of the trial judge should be rejected as based solely on conjecture. We find appellant's contention meritless.

The appellant attacks the Commonwealth's case on several grounds: 1) internal inconsistencies in the victim's testimony, 2) inconsistencies between the victim's testimony and other evidence, and 3) certain miscellaneous gaps in the evidence which would require that the verdict be rejected.

To begin with, the appellant points to the fact that the victim told the police at first that he had tried to rape her, but the next day she told the police that he had actually penetrated her. The victim also told her physician several

days later that she had been raped. Polk claims that this inconsistency in the victim's testimony affects her credibility as a witness. However, the victim offered as a credible explanation for these inconsistencies her lack of understanding of the legal definition of "rape." She explained that it was not until she spoke with her boyfriend after the assault that she understood that even slight penetration may constitute rape and that the rapist need not have ejaculated. *See* 18 Pa.C.S. §§ 3101, 3121.

We find that this inconsistency in the victim's testimony is not such that would justify our setting aside the verdict as a matter of law. *Cf. Smith, supra* (although witness's various statements contained contradictions and some inconsistencies, testimony was not so unreliable as to justify finding that the verdict based upon it must as a matter of law be set aside, where witness offered as explanation for contradictions and inconsistencies her alleged fear of defendant). Accordingly, the trial court was justified in finding the victim's explanation credible.

■ Next, the appellant points to the fact that there are inconsistencies between the victim's testimony and that of Officer Borbridge. The victim testified: "He laid on me. And when he went to put it in, the pain, you know, I just threw myself on the floor and I threw him—he went along with me." Officer Borbridge, on the other hand, testified that the victim was on the floor suffering from a convulsion: "I observed a negro female lying on the floor curled up ... and she was very hysterical. She seemed to be in convulsions. She had thrown up and was babbling incoherently." Even assuming that Officer Borbridge's claim may have been medically correct, since he was not present in the room at the time the victim fell to the floor his testimony certainly does not render the victim's explanation for having been there incredible. Additionally, Officer Borbridge's theory contradicts Polk's own testimony at trial in which he claimed that the victim had "fainted" on the floor.

Another inconsistency that appellant points to is the discrepancy between the victim's account of the disagree-

ment concerning Polk's stay in her house while she was in the hospital with the stipulation admitted into evidence. The parties agreed that, if called as a witness, the victim's boyfriend would testify that he asked the victim if she would permit Polk to stay in her house. As Polk did not offer to prove that she agreed to the request, her testimony that she fought with Polk on learning that he was in her home without her permission is uncontradicted.

■ Finally, appellant alleges certain gaps in the evidence which require that the verdict be rejected. First, he claims that there was no evidence to corroborate the victim's testimony. However, Officer Borbridge's testimony does corroborate the victim's testimony as to the portion of the incident that he observed. Moreover, Officer Borbridge testified that he found the victim with her panties pulled down around her knees and her dress and slip pulled up. This testimony provides circumstantial evidence that appellant raped her. Second, the appellant points to the absence of physical evidence of rape or of force or violence. However, because the victim initially referred to her attack as attempted rape, the hospital and police did not pursue the investigatory steps they would ordinarily have taken with a rape victim. Further, as the victim was recovering from a major operation and had fainted just prior to the incident, it is unlikely that the appellant would have had to use force to overcome her. *See Commonwealth v. Williams,* 294 Pa. Super. 93, 439 A.2d 765 (1982) (force necessary to support a rape conviction need only be such as to establish a lack of consent; it is relative depending upon the particular circumstances). Third, the appellant claims that the victim's son, Thurmon, seemed unconcerned by what he witnessed when he entered the house. This claim is unfounded as there is nothing in the record to suggest that Thurmon was unconcerned. On the contrary, the fact that it was Thurmon who called the police and climbed through a second floor window to unlock the door justifies the conclusion that he was indeed concerned.

We are not persuaded by the appellant's argument that the verdict was against the weight of the evidence, nor are we persuaded to reject the findings of the trial judge. We find, to the contrary, that the trial judge exercised sound discretion in determining the credibility of the witnesses and the weight accorded the evidence produced at trial. Insofar as the verdict was based on reason and not conjecture, we find no ground for granting appellant's motion for a new trial.

■ Appellant contends next that he was deprived of effective assistance of counsel in that trial counsel failed to interview or present the testimony of known and available witnesses who could have been beneficial to his defense. In examining a claim of ineffectiveness of counsel, the court must first determine whether the underlying claim of ineffectiveness is of arguable merit. The court must then proceed to ascertain whether the strategy chosen by counsel had a reasonable basis designed to effectuate the interests of his client. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Torres,* 329 Pa.Super. 58, 477 A.2d 1350 (1984); *Commonwealth v. Luther,* 317 Pa.Super. 41, 463 A.2d 1073 (1983).

The trial court aptly reiterated the standard of *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

(Emphasis in original). When viewed under the above standard the facts in the case at bar reveal that appellant's underlying claim of ineffectiveness is devoid of merit.

In seeking to establish that counsel was ineffective for failing to call or investigate witnesses, appellant must show (1) the identity of the witnesses, (2) that counsel knew of the existence of the witnesses, (3) the material evidence that the witnesses would have provided, and (4) the manner in which the witnesses would have been helpful to his cause. *Commonwealth v. Torres, supra*, 329 Pa.Super. at 68, 477 A.2d at 1355. In the present case the appellant claims that counsel should have interviewed the victim's children and her boyfriend. However, he has not shown how the witnesses he claims should have been interviewed would have been helpful to his defense. Moreover, Polk has made no offer of proof as to the substance of the information which the victim's children would have provided. *See Commonwealth v. Pettus*, 482 Pa. 558, 424 A.2d 1332 (1981).

Polk argues that counsel was ineffective for failing to interview the victim's son Thurmon who could have testified as to what he saw and heard when he entered the room, his mother's medical condition at that time, and the demeanor of the appellant. However, the Commonwealth properly asserts that Thurmon's testimony would have contained statements corroborating the victim's version of the incident, rather than the appellant's. Further, as the victim's son he would have been neither cooperative nor helpful. *See Commonwealth v. Warner*, 277 Pa.Super. 598, 419 A.2d 1312 (1980). Indeed, Thurmon Parker's testimony could only have damaged the appellant's case as his statement to the police included the fact that Polk did not let go of his mother until Thurmon "got into the act" and the fact that his mother told him that Polk tried to put "his thing into her."

Based on the foregoing, the trial court logically concluded that the testimony of the victim's son would have been fruitless. Counsel will not be deemed ineffective for failing to assert a defense that would not have been beneficial or

for failing to interview witnesses whose testimony would not have been helpful. *Commonwealth v. McNeil, 506 Pa. supra* at 619–20, 487 A.2d at 808; *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Leonard,* 499 Pa. 357, 453 A.2d 587 (1982); *Commonwealth v. Torres, supra.*

■ Polk also claims on appeal that counsel was ineffective for failing to interview the victim's other children. However, these witnesses were not named in the post-verdict or supplemental post-verdict motions for a new trial. Thus, appellant's claim is waived with respect to these witnesses. *Commonwealth v. Anderson, supra.*

The appellant argues additionally that post-trial motion counsel was ineffective for failing to assert the ineffectiveness of trial counsel for not interviewing or presenting the testimony of the victim's son. However, counsel cannot be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175, *cert. denied* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983). Appellant also argues that new counsel who filed supplemental post-trial motions was ineffective for failing to allege that trial counsel had not interviewed or presented the testimony of the victim's boyfriend and of her children other than Thurmon. In addition, the appellant contends that new counsel failed to conduct a proper evidentiary hearing on his ineffectiveness claims. We find this contention to be without merit as well. There is no indication in this case that a more intensive investigation than was conducted would have developed more than was already known. Therefore, supplemental post-trial counsel's assistance to the appellant cannot be viewed as ineffective.

The appellant relies on several cases to support his ineffectiveness claim; however that reliance is misplaced. In *Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976), the appellant was convicted of murder in the second degree. His ineffectiveness claim was based on counsel's failure to investigate a potentially meritorious defense as well as counsel's failure to interview eyewitnesses whose testimony

could have proved beneficial and exculpatory. Similarly, in *Commonwealth v. Abney*, 465 Pa. 304, 350 A.2d 407 (1976), on which appellant also relies, counsel rejected an opportunity to interview and present the testimony of eyewitnesses to a homicide where counsel was aware that their testimony would have exculpated his client. That is simply not the case here. To begin with, it was evident to counsel that the testimony of the victim's son Thurmon would have contradicted the appellant's defense. Additionally, Thurmon was not an eyewitness to the actual rape; therefore his testimony could not have proved exculpatory. *Commonwealth v. Jones*, 496 Pa. 448, 437 A.2d 958 (1981) (trial counsel's decision not to interview an available eyewitness to incident did not amount to ineffective representation of counsel, particularly where case turned primarily on question of credibility of defendant and undercover policeman) is also distinguishable from the instant case since the police officer in *Jones* was an eyewitness to the crime, whereas here the victim's son was not. Further, in *Jones*, at the evidentiary hearing the informant offered exculpatory testimony which corroborated the defendant's trial testimony. In contrast, the record of Thurmon's police interview establishes that his testimony would not have corroborated Polk's version of the incident.

For the reasons stated above, counsel's actions with regard to interviewing and presenting the testimony of witnesses were based on reason and, therefore, must be deemed effective.

Appellant contends finally that the sentencing court failed to state adequate reasons for the sentence imposed as required by *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). He alleges that the court's rationale was based on a misconception of the facts of the case. Polk also contends that he was denied his right of allocution at sentencing as provided for by Pa.R.Crim.P. 1405(a), which provides that at the time of sentencing, the judge shall afford the defendant the opportunity to make a statement on his own behalf.

■ The Commonwealth, on the other hand, asserts that these sentencing issues are to be considered waived due to appellant's failure to timely file a motion for reconsideration under Pa.R.Crim.P. 1410. *See Commonwealth v. Martin,* 328 Pa.Super. 498, 477 A.2d 555 (1984); *Commonwealth v. Duden,* 326 Pa.Super. 73, 473 A.2d 614 (1984). However, Polk has attempted to circumvent the doctrine of waiver by claiming that trial counsel was ineffective for failing to insist that he be afforded his right of allocution, for failing to correct the court's misimpression of the facts of the case, and for failing to file a motion for reconsideration of the sentence in order to preserve these issues for appellate review. We need not address each aspect of appellant's ineffectiveness claim as we find that trial counsel's failure to ensure that Polk was afforded an opportunity to speak on his own behalf at sentencing constituted ineffective assistance of counsel.

Our recent decision in *Commonwealth v. Brown,* 342 Pa.Super. 249, 492 A.2d 745 (1985) (en banc) addressed the issue of a defendant's right to allocution at sentencing. In *Brown,* the defendant pled guilty to robbery charges and was sentenced to imprisonment. In his second PCHA petition, Brown alleged ineffectiveness of counsel for failing to preserve or argue the claim that the sentencing judge did not invite him to exercise his allocution rights at sentencing. *Brown* held that where the record of the defendant's sentencing hearing demonstrated that, although his counsel spoke, defendant was not asked if he had a statement to make to the court, the case would be remanded to permit defendant to exercise his right to allocution. *See also Commonwealth v. Curry,* 318 Pa.Super. 490, 465 A.2d 660 (1983).

It is to be noted, however, that despite the court en banc's decision in *Brown,* it was argued that to state a valid claim for relief a petitioner must show that he had something to say at sentencing that likely would have had a favorable impact on the sentence imposed. *Brown, supra* 342 Pa. Super. at 262, 492 A.2d at 757 (Cirillo, J., Opinion in Support

of Affirmance, joined by Beck and Hester, JJ.). *Accord Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984); *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Brown*, 313 Pa.Super. 256, 459 A.2d 837 (1983) (en banc); *Commonwealth v. Bell*, 328 Pa.Super. 35, 476 A.2d 439 (1984). This line of reasoning adheres to the Court's statement of the law pronounced in *Commonwealth v. Barton*, 312 Pa.Super. 176, 182–83, 458 A.2d 571, 574–75 (1983):

> A bare denial of the right to allocution, without evidence that appellant had something to say, will not require the vacation of an otherwise proper sentence. That which he wished to say, moreover, must be such as would likely have influenced the sentence imposed. To require a vacating of the sentence and a subsequent re-sentencing, appellant will have to show that the sentencing judge was either misinformed or uninformed regarding one or more relevant circumstances. The sentence need not be vacated in order to provide appellant an opportunity to speak if he has nothing significant to say. *Commonwealth v. Rivera*, 309 Pa.Super. 33, 39, 454 A.2d 1067, 1070 (1982).
>
> The right to allocution is neither constitutional nor jurisdictional. The failure to ask a defendant if he has anything to say before sentence is imposed is not a fundamental defect inconsistent with rudimentary requirements of due process or an error inherently resulting in a miscarriage of justice. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417, 421 (1962). Thus, as the Supreme Court held in *Hill*, collateral relief is not available when a petitioner shows merely a formal failure to comply with a rule requiring the court to invite a defendant to speak before sentence is imposed.

The PCHA lends additional support to the contention that petitioner must set forth facts in support of his claim for relief. *See* 42 Pa.C.S. § 9545(b). Further, we have held repeatedly that our Court will not consider ineffectiveness claims in the abstract. *Commonwealth v. Anderson*, 501

Pa. 275, 287, 461 A.2d 208, 214 (1983); *Brown, supra,* 342 Pa.Super. at 262, 492 A.2d at 757; *Floyd, supra,* 506 Pa. at 91, 484 A.2d at 368.

In the instant case, the sentencing court failed to invite Polk to make a statement on his own behalf, even though counsel had an opportunity to speak. Nonetheless, the record reveals that it is unlikely that Polk, even given the opportunity, would have something to say that would influence the deliberations of the sentencing judge. Therefore, it would be pointless from a practical standpoint in this case to remand for allocution. However, notwithstanding the admittedly conflicting lines of authority, this Author reluctantly defers to the holding in *Brown.* Accordingly, the proper recourse is to vacate the sentence and remand so that appellant may exercise his right of allocution.

Conviction affirmed, sentence vacated, and case remanded for sentencing.