J-S09030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS TEJADA | : | |
| | : | |
| Appellant | : | No. 1207 EDA 2019 |

Appeal from the PCRA Order Entered March 29, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006216-2012,
CP-51-CR-0006219-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS TEJADA | : | |
| | : | |
| Appellant | : | No. 1210 EDA 2019 |

Appeal from the PCRA Order Entered March 29, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006216-2012,
CP-51-CR-0006219-2012

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                April 1, 2020

---

[*] Retired Senior Judge assigned to the Superior Court.

Nicholas Tejada appeals, *pro se*, from the trial court's order[1] dismissing, without a hearing, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

Tejada and two co-conspirators committed multiple gunpoint robberies on the evening of January 2, 2012. The trial court summarized the relevant facts as follows:

> On January 2, 2012[,] the first victim, Emily Orton, arrived home from work at about 10:15 pm. (N.T. [Trial,] 11/7/2012[,] at 25-26). She parked her car near the intersection of 9th and Kimball Streets in Philadelphia. (*Id.*) While walking on the sidewalk, she noticed [Tejada] and another male about ten feet away from her. (*Id.* at 26-28). They were walking directly toward her. (*Id.*) [Tejada]'s co[-]conspirator smiled at her and looped around behind her while [Tejada], with his face partially covered, pressed a gun against this victim's stomach and demanded "give me your purse, ma'am." (*Id.* at 30-32). [Tejada] snatched the victim's purse from her body and entered the backseat of an older black, beat-up Honda which made an incredibly loud noise as it drove away. (*Id.* at 33, 37). Inside the victim's purse was her purple wallet with ID cards, credit cards, and $60 United States currency. (*Id.* at 37-38). The victim contacted the police and returned to her apartment. (*Id.* at 38).
>
> Twenty minutes later, the second and third victims, Irene Thurston and Stacie Evans, respectively, had parked their cars and greeted each other near the corner of 4th and Emily Streets. (*Id.* at 77-78). Both victims noticed an old beat-up Honda with a long white scratch and a loud muffler. (*Id.*) With four Hispanic men inside, this vehicle passed them while travelling on Emily Street. (*Id.*) As the two victims continued to chat, the car turned around the block. (*Id.*) Alarmed, Ms. Thurston noticed two men

---

[1] On November 12, 2019, this Court issued an order *sua sponte* consolidating the two appeals. **See** Pa.R.A.P. 513. The order also indicated that the appeals were consolidated "without prejudice for the merits panel to quash one or both of the appeals upon review." Order, 11/12/19.

walking across an empty lot toward her and Ms. Evans. (*Id.* at 81-82). Terrified, Ms. Thurston observed [Tejada], armed with a gun, run toward Ms. Evans. (*Id.* at 83). Also terrified that [Tejada] was brandishing a gun, Ms. Evans quickly dropped her purse. (N.T. [Trial,] 11/8/12[,] at 13). [Tejada] grabbed the purse. (*Id.*) Inside Ms. Evan's [sic] purse was her license, credit cards, two checkbooks, a necklace, a digital camera, and $5-10 in United States currency. (*Id.* at 20). Nothing was taken from Ms. Thurston. (N.T. [Trial,] 11/7/12[,] at 86). The two victims immediately called the police. (N.T. [Trial,] 11/8/12[,] at 20).

In response to the flash information and radio calls for the above incidents, Officer[] [Gerson] Padilla and [Officer Ann] Brown drove to the area of 2200 S. Mildred St. (*Id.* at 95). The officers witnessed [Tejada] exiting the driver seat of the above-mentioned Honda, while the coconspirator exited the passenger seat. (*Id.* at 96). Officer Padilla stopped [Tejada] while Officer Brown chased the co-conspirator on a foot; the coconspirator was eventually apprehended. (*Id.* at 97-98). The officers recovered victim Evans['] license on the ground next to the front passenger door of the Honda as well as two pocketbooks in the backseat. (*Id.* at 99-100).

The officers escorted all three victims to the area of 2200 S. Mildred Street, at which time they all identified the black Honda as the car they had seen at their respective robbery locations. (*Id.* at 23, N.T. [Trial,] 11/7/2012[,] at 39-42, 87-91). Ms. Orton did not identify [Tejada], but her belongings were all recovered in the back of the black Honda. (N.T. [Trial,] 11/7/2012[,] at 39-42). Ms. Evans['] purse, along with most of her belongings, was [sic] recovered in the back seat of the car. (N.T. [Trial,] 11/8/2012[,] at 23). Ms. Thurston identified [Tejada] as the perpetrator brandishing the firearm at 4th and Emily Streets. (N.T. [Trial,] 11/7/2012[,] at 87-91). Officer Padilla discovered that the owner of the Honda resided at 2241 Darien Street, and that other men might have run into the house. (N.T. [Trial,] 11/8/2012[,] at 101). While the officer was standing outside the house, the co-conspirator opened the door and asked what was going on. He allowed Officer Padilla to enter the house to look for other suspects. (*Id.* at 105). Officer Padilla and her supervisor searched the house and discovered Ms. Evan's [sic] checkbooks in an upstairs bedroom. (*Id.*)

Trial Court Opinion, 12/26/13, at 3-5.

On November 14, 2012, a jury convicted Tejada of two counts of conspiracy to commit robbery, but acquitted him of two counts each of robbery, carrying a firearm without a license, carrying a firearm on public streets of Philadelphia, and possessing an instrument of crime (PIC). On March 25, 2013, the court sentenced Tejada to two consecutive terms of four to eight years' imprisonment, for an aggregate sentence of eight to sixteen years in prison. Tejada filed timely post-trial motions that were denied on July 29, 2013. On August 7, 2013, Tejada filed a direct appeal; our Court affirmed his judgment of sentence on October 31, 2014. *Commonwealth v. Tejada*, No. 2279 EDA 2013 (Pa. Super. filed Oct. 31, 2014) (memorandum decision) (withdrawn). On December 5, 2014, we granted Tejada's motion for reconsideration to clarify the holdings in *Commonwealth v. Egan*, 679 A.2d 237 (Pa. Super. 1996) and *Commonwealth v. Clinton*, 683 A.2d 1236 (Pa. Super. 1996). On reconsideration, our Court determined that the holdings of those cases, which found that discretionary aspects of sentencing claims raised for the first time in Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal can be preserved, were overruled by implication in *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278 (Pa. Super. 2004) (en banc). Accordingly, our Court affirmed Tejada's judgment of sentence. *Commonwealth v. Tejada*, 107 A.3d 788 (Pa. Super. 2015).

On December 23, 2015, Tejada filed a timely *pro se* PCRA petition raising a myriad of ineffectiveness of counsel claims. On October 27, 2017, PCRA counsel filed a motion to withdraw pursuant to *Commonwealth v.*

- 4 -

*Finley*, 550 A.2d 213 (Pa. Super. 1988), and was permitted to withdraw. New PCRA counsel was appointed and filed an amended petition on February 15, 2018. On January 25, 2019, the trial court filed its Pa.R.Crim.P. 907 notice of intent to dismiss Tejada's petition without a hearing. On March 12, 2019, Tejada filed a *pro se* response to the court's Rule 907 notice. On March 29, 2019, the trial court dismissed Tejada's PCRA petition and counsel was permitted to withdraw on appeal. Tejada filed a timely *pro se* notice of appeal and court-ordered Rule 1925(b) statement of errors complained of on appeal.

On appeal, Tejada raises the following issues for our consideration:

(1) Did the trial court render ineffective assistance when counsel refuse[d] to call alibi witness (Eliana Gonzalez) to the stand during trial, to testify on appellant's behalf, and on appellant's whereabouts at the time that the crime was being committed?

(2) Did trial counsel render ineffective assistance when counsel refuse[d] to conduct an investigation, interview the owner of (Rodriguez Grocery Store), and obtain the surveillance footage that would have demonstrated appellant's whereabouts at the time that the crime was being committed?

(3) Did trial counsel render ineffective assistance when counsel refuse[d] to inform and make appellant aware that he was waiving his fundamental right to present witnesses for his own defense, by not conducting a colloquy?

(4) Did trial counsel render ineffective assistance when counsel refuse[d] to preserve appellant's discretionary aspects of the sentence [claim] imposed by the trial court on appellant, during the sentencing phase, and post-trial motions?

(5) Did appellate counsel render ineffective assistance when counsel refuse[d] to challenge the legality of appell[ant's] sentence on appeal?

(6)     Did the PCRA court err when it filed its [Rule] 907 notice of intent to dismiss, using the "check box" form, without stating the reasons for its intent to dismiss?

(7)     Did the PCRA [court] err[] when it dismissed appellant's PCRA petition without conducting an evidentiary hearing where appellant raised material issues of fact?

Appellant's Brief at 2-3.[2]

_____

[2] The March 29, 2019 order denying Tejada's PCRA petition lists the two docket numbers of the underlying trial court cases. On April 18, 2019, Tejada filed a *single pro se* notice of appeal from that order, which also lists the two separate docket numbers. In **Commonwealth v. Williams**, 206 A.3d 573 (Pa. Super. 2019), this Court recently explained:

> Pennsylvania Rule of Appellate Procedure 341(a) directs that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). "The Official Note to Rule 341 was amended in 2013 to provide clarification regarding proper compliance with Rule 341(a)[.]" **Commonwealth v. Walker**, 185 A.3d 969, 976 (Pa. 2018). The Official Note now reads:
>
> > Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed. **Commonwealth v. C.M.K.**, [] 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two [defendants]' judgments of sentence).
>
> Pa.R.A.P. 341, Official Note.

*Id.* at 575.

In **Walker**, our Supreme Court found the above-language constituted "a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Walker**, 185 A.3d at 976-77. Accordingly, the **Walker** Court held that "the proper practice under Rule 341(a) is to file *separate* appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." *Id.* at 977 (emphasis added). However, the Court made its holding prospective, recognizing that

In **Commonwealth v. Paddy**, 15 A.3d 431 (Pa. 2011), our Supreme

Court set forth the following test for ineffectiveness claims:

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements[:] (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. With regard to the second, reasonable basis prong, "we do not

--------------------------------------------------

"[t]he amendment to the Official Note to Rule 341 was contrary to decades of case law from this Court and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." **Id.** Accordingly, the **Walker** Court directed that "in future cases Rule 341 will, in accordance with its Official Note, *require* that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal *must* be filed. The failure to do so will result in quashal of the appeal." **Id.** (emphasis added).

In **Commonwealth v. Stansbury**, 219 A.3d 157 (Pa. Super. 2019), our Court declined to quash an appeal where a defendant filed one notice of appeal listing two docket numbers. **Id.** at 158. In that case, the trial court advised a *pro se* defendant to file "**a** written notice of appeal to the Superior Court" from a single trial court order listing multiple docket numbers under one caption. **Id.** at 159. (emphasis in original). Our Court concluded that the defendant had been misinformed by the trial court, which amounted to a "breakdown in the court system" and excused the defendant's lack of compliance with **Walker**. **Id.** at 160.

The facts of this case are identical to those of **Stansbury**. Specifically, we have a *pro se* defendant who filed a single notice of appeal, listing two trial court docket numbers, after the **Walker** decision was rendered. Moreover, like the *pro se* defendant in **Stansbury**, Tejada was advised by the trial court that he had "thirty (30) days from this day, to file **a** written notice of appeal to the Superior Court." Order, 3/29/19 (emphasis added). Accordingly, we find that Tejada was misinformed by the trial court regarding the manner in which to file his notices of appeal, which amounted to a breakdown in the court system and excuses his non-compliance with **Walker**. Thus, we will address the merits of the instant collateral appeal and deny as moot Tejada's *pro se* "Motion to Proceed with Appellate Procedures."

question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

*Id.* at 442-43 (internal citations omitted).

In his first two issues, Tejada contends that counsel was ineffective for failing to call potential alibi witnesses. Specifically, he claims that Eliana Gonzalez's testimony would have "proven that [Tejada] was not a participant of the robbery, nor was [he] anywhere near the scene of the crime" and "[t]here is [a] reasonable probability that the calling of [the witness] would have led to a complete acquittal of all charges." Appellant's Brief, at 8. Tejada also asserts that the owner of Rodriguez's Grocery Store, a local establishment, would have testified that Tejada was patronizing the grocery store at the time that the crime was being committed.[3]

---

[3] In **Commonwealth v. Polk**, 500 A.2d 825 (Pa. Super. 1985), this Court set forth the standard for determining the ineffectiveness of counsel for failure to call or investigate witnesses. In order to prevail, the appellant must demonstrate: (1) the identity and existence of the witnesses; (2) that counsel knew of the witnesses; (3) the material evidence that the witnesses would have provided; and (4) the manner in which the witnesses would have been helpful to appellant's case. **Id.** at 829. **See also Commonwealth v. Gillespie**, 620 A.2d 1143 (Pa. Super. 1993).

At trial, counsel told the court that he had filed a notice of an alibi defense, but after talking to Tejada about the defense, counsel made a tactical decision not to call the witnesses. N.T. Trial, 11/13/12, at 10-11. Tejada told the court that he understood counsel's decision not to call the alibi witnesses and that he did not object to it. *Id.* at 11 ("I have also explained to him that this is a tactical decision . . . and I explained it to [Tejada] as to the reasons why I'm not going to utilize either one of those alibi witnesses."); *id.* (trial judge asks Tejada if he "indicated that he understands that and he has no objection to it" and Tejada replies, "Yes."). Based on this record evidence, we conclude that Tejada has waived any objection to counsel's failure to call alibi witnesses, where he discussed with counsel the reason why he did not believe he should call them at trial and where he agreed with that decision. *See* 42 Pa.C.S. § 9543(a)(4) (to be eligible for PCRA relief, petitioner must plead and prove that "failure to litigate the issue prior to or during trial, during unitary review or on direct appeal *could not have been the result of any rational, strategic or tactical decision by counsel*.") (emphasis added).[4]

_____

[4] In his third issue on appeal, Tejada asserts that counsel was ineffective for not making him aware that he was waiving his fundamental right to present witnesses for his own defense, by not conducting a colloquy. Our disposition of issues one and two resolves this claim, where we concluded that the court held a colloquy with Tejada where he expressed that he understood and agreed with counsel's decision to not call witnesses on his behalf. ***Commonwealth v. Paddy***, 800 A.2d 294, 316 (Pa. 2002) ("[A] defendant who makes a knowing, voluntary, and intelligent decision concerning trial

In his next issue on appeal, Tejada contends that counsel was ineffective for failing to object to the application of the deadly weapon enhancement at sentencing.[5]  Specifically, Tejada asserts that the Commonwealth failed to prove, beyond a reasonable doubt, that "he was the armed offender or that he was in the company of the armed offender who was in possession of the weapon at any time that the crime was taking place."  Appellant's Brief, at 38.

_____

strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision.").

[5] This claim implicates the discretionary aspect of Tejada's sentence.  **See Commonwealth v. Kneller**, 999 A.2d 608, 613 (Pa. Super. 2010) (en banc) ("[A] challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing.").  When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal.  **Commonwealth v. Yanoff**, 690 A.2d 260, 267 (Pa. Super. 1997).  Prior to reaching the merits of a discretionary sentencing issue:

> [this Court conducts] a four[-]part analysis to determine: (1) whether [A]ppellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether [A]ppellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).  Here, Tejada has filed a timely notice of appeal.  However, he has omitted a Rule 2119(f) statement in his brief.  Because the Commonwealth does not object to its omission, we can overlook this misstep.  Finally, we find that he has presented a substantial question.  **See Commonwealth v. Rhoades**, 8 A.3d 912 (Pa. Super. 2010) (claim that DWE improperly applied raises substantial question).  Thus, we can review the merits of his claim.

Despite the fact that the jury acquitted Tejada of any VUFA offenses, that does not preclude the fact that the judge could have concluded that, more likely than not, the gun was in his "immediate physical control." ***See Commonwealth v. Stokes***, 38 A.3d 846 (Pa. 2011) (although defendant was found not guilty of PIC and two different firearm violations in connection with shooting victim, court properly applied DWE to sentence). In fact, the court noted that it found, by a preponderance of the evidence, that the gun used in the robberies was in Tejada's "immediate physical control." N.T. Sentencing, 3/25/13, at 54. Thus, the DWE does apply to his sentence. In addition, the record confirms that there were no mandatory minimum sentences imposed in Tejada's case. While a DWE did apply to increase the applicable sentencing guideline ranges for Tejada's offenses, the DWE did not mandate a minimum term of incarceration that the court was required to apply.

In his next issue, Tejada contends that counsel was ineffective for not preserving his discretionary aspects of sentencing issue regarding the inapplicability of the DWE to his sentence. Having already determined that DWE was properly applied to Tejada's sentence where the court found that the gun used to commit the robberies was in Tejada's immediate physical control, this issue is moot. ***Commonwealth v. Jones***, 951 A.2d 294 (Pa. 2008) (to establish ineffectiveness, petitioner must establish underlying claim is of arguable merit).

Tejada next complains that the court gave him insufficient notice of its intent to dismiss his petition without a hearing pursuant to Rule 907.

- 11 -

Specifically, he asserts that the court's Rule 907 order, which included a box "checked off" stating that within 30 days his petition would be dismissed because "[t]he issues raised in the Post-Conviction Relief Act petition are without merit," violates Rule 907(1) and is inadequate.

Rule 907 provides, in pertinent part:

> (1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, **the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal.** The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

Pa.R.Crim.P. 907(1) (emphasis added). "Rule 907 pre-dismissal notice affords a petitioner the opportunity to seek leave to amend his petition and correct any material defects. The ultimate goal of this process is to permit merit review by the PCRA court of potentially arguable claims." *Commonwealth v. Weimer*, 167 A.3d 78, 86 (Pa. Super. 2017) (citations omitted).

Instantly, the court's Rule 907 notice form includes several possible reasons which a PCRA court might dismiss a petition. Here, the PCRA judge indicated it found Tejada's issues meritless. *Cf. Commonwealth v. Feigherty*, 661 A.2d 437 (Pa. Super. 1995) (court failed to comply with rule

- 12 -

regarding notice of intent to dismiss PCRA petition without hearing where court never gave mandatory notice and where counsel's *Finley* letter does not suffice for such notice). Where Tejada: was given the opportunity to seek leave to amend his petition; filed a detailed three-page response to the court's notice explaining why his petition should not be dismissed; has not proven prejudice; and has failed to present any issues warranting an evidentiary hearing, we do not find he is entitled to relief on appeal. *Commonwealth v. Albrecht*, 720 A.2d 693, 709-10 (Pa. 1998) (petitioner not entitled to relief based on PCRA court's failure to explain reasons supporting Rule 907 notice where court provides petitioner opportunity to amend petition, grants petitioner leave to submit *pro se* supplements, and accepts filings submitted on petitioner's behalf following issuance of Rule 907 notice).

In his final issue on appeal, Tejada asserts that the court improperly dismissed his petition without an evidentiary hearing where he "raised issues of material fact." Appellant's Brief, at 11. Tejada's claim relies on the arguments he has presented in his "aforementioned issues." *Id.* Having determined that those issues are meritless, we find he was not entitled to an evidentiary hearing on his petition. *See* Pa.R.Crim.P. 907(1) ("If the judge is satisfied from . . . review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, [after giving notice of its intent to dismiss] the judge thereafter shall order the petition dismissed[.]").

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/1/20