451 A.2d 760

**COMMONWEALTH of Pennsylvania**

v.

**Steven BULARD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1982.

Filed Oct. 15, 1982.

Allan M. Tabas, Philadelphia, for appellant.

Stuart L. Haimowitz, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, McEWEN and LIPEZ, JJ.

WICKERSHAM, Judge:

On June 16, 1981, appellant Steven Bulard appeared before the Honorable Herbert R. Cain, Jr., charged with the theft of a vehicle as well as unauthorized use of such vehicle, and waived a jury trial. The court found Bulard guilty of both charges. On November 19, 1981, Judge Cain sentenced Bulard on Bill No. 543 June Session 1980, theft by unlawful taking or disposition, to a term of imprisonment of not less than eleven and one-half months nor more than twenty-three months in the county prison. Sentence was suspended on the remaining conviction and this direct appeal was taken.[1]

The thrust of the Commonwealth case at trial was provided by Officer John Terry of the Philadelphia Police Department who testified that on the afternoon of May 30, 1980, he

---

1. Appellant is represented by Allen M. Tabas, Esquire, court appointed counsel, different from trial counsel. The statement of the questions involved is set forth as follows:

    1. Did the trial court err in regarding Leroy Lawton as an alibi witness for purposes of Pa.R.Crim.P. 305(C)(1)(A)?

    2. Even if Leroy Lawton was an alibi witness, did the trial court err in excluding his testimony, rather than granting a continuance as a remedy for trial counsel's failure to file a written notice of alibi defense prior to trial?

    3. Was trial counsel ineffective in failing to file written notice of an alibi defense prior to trial?

    4. Did the trial court err in refusing to hold an evidentiary hearing on the ineffectiveness of trial counsel, where the issue of trial counsel's effectiveness was raised in post-trial motions?

Brief for Appellant at 4.

was travelling in a police vehicle on Champlost Street when he observed a red Chevrolet coming eastbound, towards him, operated by Steven Bulard. Officer Terry made a u-turn and began to follow the red Chevrolet as it went through a red light at Ogontz and Champlost. Next the red Chevrolet ran into the back of a parked vehicle on the corner; two people got out of the car and ran. Officer Terry then chased the operator of the car, whom he had identified as appellant Bulard, approximately thirty-five or forty feet into an alley where he apprehended him. The officer later determined that the vehicle was stolen. Record at 8–13.

On cross-examination Officer Terry testified:

Q. Now, did you ever lose sight of him during this chase?

A. Yes.

Q. When was that?

A. When he ran into the alley. He made the right turn into the main alley, then he went approximately two doorways and he made another right turn. At that point I lost sight of him, but it was a dead end. After he made the right he couldn't go any further. It just went into the back of a door and that was it.

Q. Were there any other people there?

A. No.

Record at 26.

The Commonwealth concluded by calling as a witness John Yoder who testified that he was the owner of the red 1979 Chevrolet Monte Carlo and that he had parked his vehicle at 9:00 a.m. on May 30, 1980, on a parking lot at Park Avenue and Chew. He was later called by the police and identified his car, which had been damaged, about 4:00 o'clock that afternoon. He said he had never given authority to Steven Bulard to operate his vehicle.

The defendant testified at trial that on the afternoon in question he was standing near the intersection of Champlost and Ogontz, outside of a bar with five or six other people. He saw his friend Leroy Lawton and they talked. About

this time he heard a large crash and a minute later two people ran past him. He saw a "cop chasing them."

A. Yes, there is a bar right there at the end of the driveway and I was standing beside it, by the door, beside the door.

Q. Were you the only one there, or were there other people?

A. There were about six or five other people there.

Q. What happened as you were standing there?

A. At that time I seen a friend of mine, that Leroy Lawton, he was coming down the driveway, and he had called my name, right, because he had a beer bottle in his hand, so he called me.

So I was starting to walk up the driveway. I heard this loud crash sound. At that time, about a minute or seconds later, I heard these two people coming up behind me. They ran past me and shot out toward the left of the other driveway. It is an open driveway on the left-hand side, and they shot out that way.

And about say a second later a cop ran in the driveway, he was on foot, chasing them, and he grabbed me, threw me up against the side of the wall, and told me I just ran out of the car, I was in a stolen car.

He grabbed me, handcuffed me, handcuffed me, and took me out of the driveway, took me out to the car, and threw me in the police car.

. . . .

BY THE COURT:

Q. You said he was—the cop was chasing them?

A. Yes, it was two people.

Q. Did you see them from where you were?

A. Excuse me?

Q. Did you see them at the time the cop came up?

A. Did I see the two people? Yes.

. . . .

Q. How many other people were left in the driveway with you?

A. Four or five people.

Q. So there are four or five other people with you at the time you were arrested in the driveway?

A. Yes.

Q. The other two dudes, they ran out the driveway and down; is that it?

A. Yes.

Q. So you don't know anything about any red Monte Carlo being smashed up; is that right?

A. Yes.

Q. That's right?

A. I don't know anything about it.

Q. You weren't driving any red Monte Carlo?

A. No, I don't even know how to drive.

Q. If the officer says he saw you behind the wheel when he drove past you and he saw you two other times as he was chasing you, he is mistaken?

A. That's right, it wasn't me.

Q. You never saw this officer prior to being arrested by him; is that right?

A. That's right.

Q. The officer who testified is the one who arrested you; right?

A. Excuse me?

Q. The officer who testified is the same officer who arrested you; right?

A. Yes.

Q. He arrested you in that alleyway; right?

A. Yes.

Q. It was around 3:00 o'clock in the afternoon on May 30th, 1980, when you were arrested; is that right?

A. Yes.

Record at 49–50, 55–56.

Defendant's trial counsel attempted to call Leroy Lawton to the stand. He was sworn and stated preliminarily that it was an incident occurring May 30, 1980, about 3:00 o'clock in the afternoon which brought him to court. At this point,

the assistant district attorney objected to Lawton's testimony contending that it would be "in the nature of alibi," and "I don't have any notice of this witness from the defense." Record at 34. The trial judge reserved a ruling on the question, heard the testimony of Lawton and then granted a motion to strike Lawton's testimony.

> THE COURT: I am saying he is an alibi witness. Somebody from your office just didn't file it with the omnibus motion.
>
> That is unfortunate, but the testimony of this witness clearly tries to establish an alibi.
>
> I will grant the motion to strike the testimony.

Record at 43.[2]

Pennsylvania Rule of Criminal Procedure 305 provides in pertinent part:

**2.** Lawton's sworn testimony, which was stricken, was to the effect that he and Steven Bulard were standing together talking when two guys ran by; a few seconds later an officer appeared and told Bulard to get up against the wall.

Q. When you say "Steve," are you referring to the defendant?
A. Yes.
Q. Go ahead.
A. So I had asked the cop, I said, 'What you throwing him up against the wall for?'
  He said, 'He just jumped out of a car.'
Q. And what did you say?
A. I said, 'He was just on the corner.'
  So he told me he was taking him in for routine investigation, or something. He took him back and took him around the corner, and this lady came running out the beauty parlor, talking about, "That's my car."
  . . . .
Q. And when you first saw Steve where was he standing?
A. In the doorway of the bar.
Q. And what was he doing there?
A. Just hanging around, as far as I could see.
Q. And was there anybody else around?
A. There was a couple other people in the doorway.
Q. When you saw him what did you do?
A. I called him.
  . . . .
Q. When you called to him what did Steve do?
A. He walked toward me.
Q. And what happened next?
A. Well, the guys came running around the corner.

## C. Disclosure by the Defendant

(1) *Mandatory:*

(a) Notice of Alibi Defense: A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.

. . . .

(d) Failure to File Notice: If the defendant fails to file and serve notice of alibi defense or insanity or mental infirmity defense as required by this rule, or omits any witness from such notice, the court at trial may exclude the testimony of any omitted witness, or may exclude

Q. When you say some guys came running around the corner, how many guys were there?
A. Two.
Q. And what corner did they come running around?
A. They came from Ogontz. From where I am at, see, I am still in the driveway. They come running from Ogontz, running north.
Q. What happened after—where did these two guys go that ran around the corner, if you know?
A. Just after you get by the bar, like if you walk up the driveway, like let's say twenty feet, there is another short driveway that leads out to Roselyn Street.
Q. Is that where they went, up that short driveway?
A. Yes.
Q. Now, what happened next after they went up the short driveway?
A. Well, around about a few seconds later the cop come around the corner and tells Steve to get up against the wall.
Q. The corner that the cop came around, was that the same corner that the two men came around?
A. Yes.
MR. FLANNERY: Your Honor, it sounds like an alibi witness to me, after this testimony.
    I object.
THE COURT: You may continue. I will rule on it later.
Record at 38–41.

entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

In *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980), alibi was defined as follows:

We have previously stated:

"[a]libi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party."

*Id.,* 490 Pa. at 631, 417 A.2d at 602.

There can be little question but that witness Lawton was an alibi witness whose name and address should have been supplied under the mandate of Pa.R.Crim.P. 305 C(1)(a). It was the clear position of appellant Bulard that he was not the operator of the stolen red Chevrolet Monte Carlo and that he was not the individual being chased by Officer Terry. It was the intention and desire of appellant Bulard to call as a witness, in support of his alibi defense, Lawton who in turn would testify that Bulard was not the person being chased by the police officer and that Bulard had been standing and talking to Lawton for some period of time while the crime was taking place elsewhere. As the Commonwealth-appellee argues in its brief, Lawton was "a textbook alibi witness."

In the instant matter, Lawton's testimony attempted to place the defendant outside of a bar at approximately the time the officer observed two individuals running from a car which was subsequently determined to be stolen. His testimony attempted to show that two individuals ran past the area where the witness and defendant were standing, followed seconds later by the arresting officer. If believed, this testimony would render it impossible for the defendant to be the individual whom the arresting officer saw run from the stolen car. Therefore, Lawton was a

textbook alibi witness and within the meaning of Pa.R. Crim.P. 305 C(1)(a).

Brief for Appellee at 4–5.

▮ The issue on the present appeal is whether or not trial counsel was ineffective for failing to provide the Commonwealth with proper written notice pursuant to Pa.R. Crim.P. 305 C(1)(a), which failure resulted in the exclusion of Lawton's testimony from the defendant's evidence. Indeed, following the trial court's striking the testimony of Lawton, trial defense counsel stated on the record that "the attorney that handled this case from my office then certainly was ineffective." We agree. We are able to determine that appellant's claim of ineffectiveness of trial counsel is meritorious without the need to remand to the lower court for an evidentiary hearing. It is clear in this Commonwealth that trial counsel's failure to present a possible witness is not per se ineffective assistance of counsel. Certainly counsel need not call every person mentioned by a defendant. *Commonwealth v. Robinson,* 232 Pa.Super. 328, 334 A.2d 687 (1975). The failure to call a possible witness will not be equated with a conclusion of ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Hawkins,* 445 Pa. 279, 284 A.2d 730 (1971). Appellant must show that the testimony of Lawton would have added to his defense. *Commonwealth v. Rainey,* 282 Pa.Super. 15, 422 A.2d 652 (1980), and that he was willing and available to testify. *Commonwealth v. Warner,* 277 Pa.Super. 598, 419 A.2d 1312 (1980).

▮ In the present factual situation, we have no doubt on any of these points. Lawton was available to testify, indeed he was in the courtroom, was sworn as a witness and presented his testimony under a reservation of ruling by the court. His testimony, if believed and if admitted into evidence, would have added to the defense of Bulard inasmuch as it substantiated Bulard's own testimony as to his activities on the afternoon in question. Furthermore, trial defense counsel wanted to have the court hear the testimony

of Lawton because he called Lawton as a witness for the defense. The testimony of Lawton was not considered by the court because defense trial counsel had failed to follow the mandate of Pa.R.Crim.P. 305 C(1)(a). There is no need to remand this case for an evidentiary hearing to find out why such a mandate was not properly pursued by defense counsel; there is no possible reason, beneficial to the appellant, why the mandate was not pursued. Accordingly, the judgment of sentence is vacated and the matter is remanded for a new trial.