**COMMONWEALTH of Pennsylvania**

v.

**Patricia Ann CARBONE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 1997.
Filed Jan. 12, 1998.
Reargument Denied March 18, 1998.

Kevin J. Rozich, Johnstown, for appellant.

Andrea F. McKenna, Deputy Atty. Gen., Harrisburg, for the Com., appellee.

Before McEWEN, President Judge, CIRILLO, President Judge Emeritus, and OLSZEWSKI, J.

CIRILLO, President Judge Emeritus:

Appellant Patricia Ann Carbone appeals from the order of the Court of Common Pleas of Somerset County denying her request for relief under the Post Conviction Relief Act, (PCRA), 42 Pa.C.S.A. § 9541, *et seq.* We reverse and remand for a new trial.

Patricia Carbone, age thirty-one, was charged with first-degree murder, third-degree murder, and voluntary manslaughter. She admitted stabbing the decedent, Jerome

Lint, but claimed self-defense.[1] Carbone was tried before a jury and convicted of first-degree murder. She was sentenced to life imprisonment. On appeal, this court, sitting *en banc*, found the evidence insufficient to sustain a conviction for first-degree murder. *Commonwealth v. Carbone*, 375 Pa.Super. 261, 544 A.2d 462 (1988) (*en banc*). This court determined that the Commonwealth had failed to disprove Carbone's claim of self-defense beyond a reasonable doubt, *see* 18 Pa.C.S.A. § 505, and, therefore, the evidence did not establish that the killing was inspired by malice. We remanded for a new trial on the charge of voluntary manslaughter. *Commonwealth v. Carbone*, 375 Pa.Super. at 277–79, 544 A.2d at 470.[2]

The Supreme Court of Pennsylvania granted the Commonwealth's petition for appeal, reversed this court's decision and remanded for disposition of the issues raised but not addressed in Carbone's direct appeal. *Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584 (1990). Following review on remand, this court affirmed the judgment of sentence. *Commonwealth v. Carbone*, 408 Pa.Super. 644, 588 A.2d 558 (1990).

On May 21, 1996, Carbone filed a petition for post-conviction relief. *See* 42 Pa.C.S.A. § 9541, *et seq.*[3] In her petition Carbone alleged that trial counsel was ineffective for (1) failing to call any character witnesses on her behalf and (2) failing to call Kathy Potter as a defense witness. The PCRA court denied relief. Carbone petitioned for reconsideration of the decision on her second claim of ineffectiveness of counsel, that counsel was ineffective for failing to present Kathy Potter as a rebuttal witness. The PCRA court denied reconsideration and concluded that the issue was waived under 42 Pa.C.S.A. § 9544(b) because current counsel failed to raise it on direct appeal. This appeal followed. Carbone raises three issues for our review:

1. Whether the trial court erred in determining that petitioner waived her claims of ineffectiveness of trial counsel?

2. Whether the petitioner's constitutional right to due process was violated by the trial court's denial of her PCRA petition when the trial court determined the petitioner previously waived her claim to ineffectiveness of counsel?

3. Whether the amendments to the PCRA extinguished the "extraordinary circumstance" exception to the waiver doctrine?

Each of these claims questions the waiver doctrine of the Post Conviction Relief Act.

---

1. At trial, Carbone testified that she was walking alone along Route 56 near the town of Windber on Saturday evening, June 9, 1984, when a small car going her direction slowed down, pulled in front of her and stopped. The car lights went off and the passenger door opened; as she bent over to look into the open door and decline what she thought was an offer for a ride, the driver "yanked hold of [her] hair" and pulled her into the car. Carbone testified that the driver, Jerome Lint, stopped in a remote and heavily wooded area and chased her as she ran from the car. Carbone stated that while she was running, she reached into her purse for a utility knife. She testified that Lint tackled her and she stabbed him because she feared he would rape and possibly kill her. Carbone then saw headlights and ran toward them and into the street. The Commonwealth's witness, Mr. Varner, testified that while he was driving with his family, a woman flagged him down. She was standing in the middle of the road with a knife in one hand and a purse in the other, "screaming over and over 'He's going to kill me, help me, let me in the car please.' " Mr. Varner allowed her to ride on the hood of his car and he dropped her off at the nearest house. *See Commonwealth v. Carbone*, 524 Pa. 551, 553–58, 574 A.2d 584, 585–88 (1990).

2. "It is important to note that the concept of malice is inconsistent with self-defense. In order to meet its burden of proof on the element of malice in a murder prosecution, the Commonwealth must exclude self-defense beyond a reasonable doubt. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 552, 388 A.2d 1068, 1069, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). The existence of self-defense, or otherwise stated, the state's failure to prove the absence of self-defense beyond a reasonable doubt, precludes the jury from fully, reasonably and satisfactorily inferring the existence of malice. [*Commonwealth v.*] *Drum*, [58 Pa. 9,] 16 (1868)." *Commonwealth v. Carbone*, 375 Pa.Super. at 273–75, 544 A.2d at 468.

3. Appellant's petition is governed by the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.*, as amended on November 17, 1995, effective in 60 days. As stated in footnote 4, *infra*, this is the version applicable here.

We, therefore, address these issues simultaneously.

■■■ On appeal from the denial of PCRA relief, this court must determine whether the post-conviction court's findings were supported by the record and whether the court's order is otherwise free of legal error. *Commonwealth v. Blackwell,* 436 Pa.Super. 294, 647 A.2d 915 (1994). The PCRA court's findings and credibility determinations are binding on review only if supported by the record. *See id.*; *Commonwealth v. Beasley,* 544 Pa. 554, 678 A.2d 773 (1996). *See also Commonwealth v. K.M.,* 452 Pa.Super. 7, 11–12, 680 A.2d 1168, 1171 (1996).

■■■ The purpose of the PCRA[4] is to prevent a "fundamentally unfair conviction," *Commonwealth v. Weinder,* 395 Pa.Super. 608, 626–27, 577 A.2d 1364, 1374 (1990), and provide an action where persons convicted of crimes they did not commit or individuals who have been serving illegal sentences may obtain collateral relief. 42 Pa.C.S.A. § 9542. In order to be eligible for relief, a petitioner must establish at least one of the factors under section 9543(a)(2)[5] and that the claim of error has not been previously litigated or waived. *See* 42 Pa.C.S.A. § 9543(a)(3). Section 9544(b) of the PCRA states: "For purposes of this subchapter, an issue is waived if a petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

■■■ Petitioner argued to the PCRA court that her claim was not subject to the waiver doctrine because her current counsel (who represented her on direct appeal) was completely unaware of the existence of the proposed defense witness, Kathy Potter. In response, the Commonwealth argued that petitioner sought to equate Kathy Potter's testimony with "after-discovered evidence." The PCRA court agreed with the Commonwealth's characterization, analyzed petitioner's claim under the after-discovered evidence test,[6] and concluded that because

---

4. The version of the Post Conviction Relief Act applicable to this case provides that in order to be eligible for relief, the petitioner must plead and prove by a preponderance of evidence:
   (2) That the conviction or sentence resulted from one or more of the following:
   (i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
   **(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.**
   (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
   (iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
   (v) A violation of the provisions of the Constitution, laws or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.
   (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

   (vii) The imposition of a sentence greater than the lawful maximum.
   (viii) A proceeding in a tribunal without jurisdiction.
   (3) That the allegation of error has not been previously litigated or waived.
   (4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel.
   42 Pa.C.S.A. § 9543(a)(2)–(4)(emphasis added).

5. *See* footnote 4, *supra.*

6. The decision to grant a new trial on the basis of after-discovered evidence on a collateral appeal is premised on the standards set forth in the Post Conviction Relief Act. *See* 42 Pa.C.S.A. § 9541 *et seq.* A person is eligible for relief if he has been convicted of a crime and is imprisoned, and he can show that his conviction is the result of "[t]he unavailability at the time of trial of exculpatory evidence that subsequently became available and that would have affected the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). *See Commonwealth v. Cooney,* 444 Pa. 416, 417, 282 A.2d 29, 30 (1971). To grant such relief the court must be satisfied that the evidence "could not have been obtained at trial by reasonable diligence, that it is not cumulative or of such a nature that it merely impeaches credibility, and that it would be likely to compel a different result." *Commonwealth v. Galloway,* 433 Pa.Super. 222, 640 A.2d 454

Kathy Potter was interviewed by defense counsel and was available for trial, petitioner failed to meet the "unavailable at trial" requirement of the after-discovered evidence test. *See Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978); *Commonwealth v. Cooney*, 444 Pa. 416, 417, 282 A.2d 29, 30 (1971); *Commonwealth v. Galloway*, 433 Pa.Super. 222, 640 A.2d 454 (1994); *Commonwealth v. Bonaccurso*, 425 Pa.Super. 479, 625 A.2d 1197 (1993).

On reconsideration, petitioner urged the PCRA court to reexamine her argument that current .counsel/direct appeal counsel had no knowledge of Kathy Potter until after petitioner's original appeal rights had been exhausted, making it impossible for current counsel to raise the issue on direct appeal. The PCRA court dismissed this argument, this time on the basis of waiver. *See* 42 Pa.C.S.A. § 9544(b). The court stated that in light of the November 17, 1995 amendments to the PCRA, which eliminated the "extraordinary circumstances" language, there are "no longer any ... loopholes for Petitioner to squeeze through." On appeal, the Commonwealth continues this argument, suggesting that the 1988 amendments to the waiver provision of the PCRA, 42 Pa.C.S.A. § 9544,[7] preclude relief in this case. We find the argument unconvincing.

Prior the 1988 amendments, section 9544(b) stated:

> **(b) Issues waived.**—For the purposes of this subchapter, an issue is waived if:
>
> (1) .The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.
>
> **(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.** (Emphasis added).

The 1988 amendments deleted the language in section 9544(b)(2); the amended version provided: "**(b) Issues waived.** -For purposes of this subchapter, an issue is waived if the petitioner failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter." [8]

■ Courts of this Commonwealth have interpreted the "extraordinary circumstances" necessary to overcome waiver as ineffectiveness of counsel. *See, e.g., Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982) (ineffective assistance of counsel is an extraordinary circumstance that justifies failure to raise an issue); *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978) (issue of ineffective assistance of counsel was considered as a separate basis for relief as well as extraordinary circumstance justifying failure to raise the issue prior to trial); *Commonwealth v. Garrison*, 303 Pa.Super. 555, 450 A.2d 65 (1982) (extraordinary circumstance of prior counsel's ineffectiveness precluded summary dismissal); *Commonwealth v. Bable*, 248 Pa.Super. 496, 375 A.2d 350 (1977) (ineffective assistance of counsel constitutes extraordinary circumstances entitling one to post-conviction relief); *Commonwealth v. Felder*, 246 Pa.Super. 324, 370 A.2d 1214 (1976) (ineffectiveness of counsel constitutes extraordinary circumstances justifying failure to appeal);

---

(1994). *See Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978); *see also Commonwealth v. Bonaccurso*, 425 Pa.Super. 479, 484, 625 A.2d 1197, 1199 (1993) (to sustain a collateral petition for a new trial on the basis of after-discovered evidence, the evidence must have been unavailable at trial, it must be exculpatory, and it must be of such a quality that it would change the outcome of the trial).

7. 1988, April 13, P.L. 336, No. 47, § 3, imd. effective.

8. The PCRA was again amended in 1995. 1995, Nov. 17, P.L. 1118, No. 32 (Spec.Sess.No.1), § 1, effective in 60 days. The language of section 9544(b) was slightly revised to read: "**(b) Issues waived.**-For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). As noted above, this version of the PCRA is applicable here. For purposes of the "extraordinary circumstances" argument, however, the distinctions are of no consequence.

*Commonwealth v. Adams,* 236 Pa.Super. 82, 344 A.2d 905 (1975) (ineffective assistance of counsel constitutes an extraordinary circumstance justifying postconviction petitioner's failure to raise issue previously). *Cf. Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995) (extraordinary circumstance of capital case excused waiver). Ineffectiveness of counsel, however, remained a separate basis for relief under the PCRA as amended in 1988, *see* 42 Pa.C.S.A. § 9543(a)(2)(ii),[9] and as amended in 1995, *see* 42 Pa.C.S.A. § 9543(a)(2)(ii).[10] We interpret the removal of the "extraordinary circumstances" language not so much as the closing of a "loophole," but rather as the extraction of excess language. Although the 1988 amendments retained ineffectiveness of counsel as a separate basis for relief under the PCRA, the amendments added the limitation that the ineffectiveness must have undermined "the truth-determining process." The 1995 amendments retained this restriction. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). The more stringent requirement for obtaining collateral relief based on ineffectiveness of counsel may have had the effect of closing some loopholes, as the PCRA court observed; however, the purpose of the amendments was not to preclude ineffectiveness claims altogether or to preclude relief where the waiver was caused by counsel's ineffectiveness. *See Commonwealth v. Christy,* 540 Pa. 192, 201–02, 656 A.2d 877, 881, *cert. denied,* 516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995) (appellant can overcome waiver by making a showing of ineffective assistance of counsel); *see also Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516 (1997) (appellant avoided waiving claims in his PCRA petition by asserting that all prior counsel were ineffective for failing to previously raise them).

Where the issue of waiver is raised in the context of ineffectiveness of counsel, the appellant must demonstrate that the failure to litigate the issue prior to, or during trial, or on direct appeal could not have resulted from any reasonable tactical decision of counsel. *See* 42 Pa.C.S.A. § 9543(a)(4). "Ineffective assistance of counsel provides a basis for relief under the PCRA only when it 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Commonwealth v. Appel,* 547 Pa. 171, 199–201, 689 A.2d 891, 905 (1997) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). Petitioner must plead and prove this by a preponderance of the evidence. 42 Pa.C.S.A. § 9543(a)(2)(ii). *See Commonwealth v. Banks,* 540 Pa. 143, 148–49, 656 A.2d 467, 469–70 (1995); *Appel, supra.*

At the PCRA hearing, trial counsel, Mr. Jerry Spangler, then the public defender representing Patricia Carbone, testified that prior to trial he had spoken with Kathy Potter on the telephone, made handwritten notes of the conversation, and then typed those notes and placed them in the file.[11] Kathy Potter indicated during the telephone conversation that she was available and willing to testify on behalf of the defense. This was marked in Mr. Spangler's notes.

It was also established at the PCRA hearing that, at the conclusion of the Commonwealth's case-in-chief, defense counsel made an offer of proof with respect to Kathy Potter's testimony. Defense counsel's request reads as follows: "There would probably be a request for ruling under testimony, which would be: In Christmas of 1983 at a bar in Johnstown called Del's, the decedent approached her [the witness] and attempted to pick her up." The Commonwealth objected, to which the court responded: "Any prior

**9.** As amended 1988, April 13, P.L. 336, No. 47, § 3, imd. effective.

**10.** As amended 1995, Nov. 17, P.L. 1118, No. 32 (Spec.Sess. No. 1), § 1, effective in 60 days.

**11.** Mr. Spangler's typed notes indicated that on March 27, 1985, Kathy Potter was contacted by telephone. During the telephone interview she relayed that she had observed Jerry Lint, the victim, on two or three occasions at a bar in

Johnstown. She stated that Lint's behavior was obnoxious, that he attempted to "pick her up" and was persistent in his efforts, and that when she rebuffed him he took her by the arm. At that point she told Lint she was a police officer and she told him to "leave her alone." Another patron at the bar reiterated, "you better leave her alone." The witness indicated that on several occasions she observed Jerry Lint acting in this manner.

contact between the people would be admissible." Thereafter, defense counsel clarified that the prior contact was with another woman, not the defendant. To this, the court responded: **"I'd hate to be on trial for murder** and have them **introduce against me** all the girls I tried to pick up—..." (emphasis added).

From this exchange it is clear that the court did not fully understand the nature of the offer of proof. Defense counsel requested a ruling on the admission of testimony from a witness who had contact with the **victim.** The court's response indicates that the court misunderstood the proffer as evidence against the **defendant.** In any event, no formal ruling was ever transcribed or made a part of the certified record for appeal.

Defense counsel, based on his experience with the trial judge, chose not to pursue the matter of Kathy Potter's testimony. The PCRA court accepted defense counsel's characterization of the trial court's statement as a "ruling." In fact, the PCRA court reiterated defense counsel's "experience" with the trial judge to support its finding of waiver, despite the fact that the trial court's statement indicates that it did not grasp the nature of defense counsel's request. The PCRA court stated that the exchange between defense counsel and the trial court **"weighs heavily in our decision."** (emphasis added). Moreover, defense counsel admitted at the PCRA hearing that his "offer of proof" did not come close to encompassing the information he possessed; the offer never even mentioned Kathy Potter's name.[12]

At the PCRA hearing, Kathy Potter testified as follows:

Q: I'm going to take you back into the early summer of 1984—were you a patron at the Del's Cabaret Lounge in the Stoneycreek/Johnstown section of Johnstown, Pennsylvania?

A: Yes.

Q: At that time, ... were you encountered by a man that you later learned to be

Jerome Lint, the decedent in the Patty Carbone murder trial?

A: Yes.... I was sitting out in the bar area with a friend—a girlfriend, another police officer actually. I was turned towards her and we were having a conversation when I was approached from the left side; and the gentleman said, "Hey." I turned around and said, "Hey yourself," and turned away from him. At that time, he said, "Hey, what is your sign?" I found that to be very amusing and turned and said to him, "Curb your dog," and turned away from him again. At that time, he bumped my arm—I don't know if he elbowed me or what, but he bumped my left arm; and I turned and he said—he told me that I was not nice and asked me why I did that. And I responded, "you didn't like that sign? How about no parking," ... and turned away from him.

Q: Did he continue in his efforts to bother you?

A: At that time, **he grabbed my arm from the back,** which turned me to the back, and told me that it was not nice.... I turned away from him. I heard someone say, "Jerry, leave her alone." I don't know who it was. I didn't see anybody else.... After approximately an hour ... my friend and I decided to leave. Her vehicle was parked right outside across the parking lot from the side exit. My car was parked down further into a lot that the asphalt had stopped and it was gravel and it was very dark back in there. [My friend] went to her vehicle. I walked to my vehicle. And as I was approaching my vehicle, I hear gravel, footsteps, and I knew someone was behind me. I walked quickly towards the car. As I was at the back of the car, I turned and th[ere] was the gentleman that approached me at the bar. At that time, **I told him to back off. He continued to approach me. I walked backwards up along the side of my vehicle; and at that time, I didn't have my keys in my hand so I reached in my purse, retrieved my keys with my left**

in the record is "the decedent approached her and attempted to pick her up."

**hand and put my right hand on my off-duty revolver.**

Q: Why did you do that, Kathy?

A: Because he scared me. I'm not easily intimidated, but he frightened me. No one else was there. With my left hand, I started to unlock the door. He approached a little closer; and at that time, I told him to get the f—— away from me. I also informed him that I was a police officer and that I would adjust his genitalia.

Q: You had threatened to shoot him?

A: Yes, I did.... He put his hand on my car and just stood there.

Q: Even after you pulled the gun?

A: Oh, my hand was still on my gun in my purse at that time. He put his hand on the side of my car and just stood there looking at me. So at that time, I did pull my gun out of my purse. I unlocked my car. I told him that I was a police officer and that he was messing with the wrong person. I unlocked my car, jumped in. I honestly don't know where he went after that. All I was concerned with was getting that door locked, getting that car started and getting out of there. When I backed up, he wasn't behind me. When I pulled forward he was off to the side like he was again going to go into the ... bar.

Q: And when did you realize— or when did you become aware that this was the same gentleman [that] had been killed in an incident which happened in June of ... 1984?

A: I can't give an exact date. I can give an approximate time period. It was probably a week or so. I saw his picture in the newspaper and I called my friend and said that somebody—you know, that the "Curb your dog" guy was dead. I recognized his picture.

Q: **Is there any question in your mind that that was the same person who accosted you at the Del's Lounge?**

A: **No, sir.**

Q: Did you at some later point in time have an opportunity to be in contact with the defense team for Patty Carbone in the initial trial?

A: I remember speaking with a defense attorney.

Q: And did you do so over the telephone?

A: Yes.

Q: Did they ever ask you to give a written statement?

A: Not to my recollection.

Q: Did they ever ask you [m]ake a recorded statement?

A: No.

* * * *

Q: Did anybody from her defense team ever get in contact with you again other than on that one occasion?

A: I don't believe so.

* * * *

Q: Did you ever—did you go into this amount of detail with the attorney that you spoke with—or I'm assuming it was an attorney, but I realize you testified that you don't remember—did you go into the detail in regard to the conversation? Did they seem interested in what you had to say about what happened that evening?

A: **I'm sure that I told them the complete story.** As far as whether they were concerned about details, I have no idea. But I feel certain that I gave them a complete story.

Q: Now, this happened—this was almost 12 years ago?

A: Right.

Q: How can you be so sure of the details that you gave the Court?

A: I have been approached before, but I never saw anybody's picture in the paper recently afterwards that they were deceased. It was because of what happened and then seeing his picture that I remember what happened. (emphasis added).

The PCRA court determined that defense counsel's reference and the trial court's "ruling" was sufficient to put current counsel (who represented Carbone on direct appeal) "on notice of Kathy Potter's existence." The PCRA court concluded, therefore, that the claim was waived because current counsel

failed to raise it on direct appeal to this court. *See* 42 Pa.C.S.A. § 9544(b).

Compounding the confusion in this case is the fact that it remains unclear whether current counsel ever had access to defense counsel's notes and his summary of Kathy Potter's interview. At the PCRA hearing, the following dialogue occurred between current counsel and defense counsel:

Q: When I took over the case for the appeal of Patricia Carbone, did you have any knowledge of what information was given to me or not given to me by the Public Defender's Office?

A: I left the Public Defender's Office after post-trial motions were filed and determined, but before sentencing occurred. So I really have no knowledge as to what was provided to you afterwards.

Q: Well, when you went to review for this particular hearing the file, would the fact that you found your original notes and a typed note of interviews with witnesses still in the Public Defender's file, is that fair to say that they were not given to me?

A: That's fair.

Before us, then, is a meager offer of proof, a ruling which does not address the offer of proof, a defense attorney who interprets this misunderstanding as a ruling, and, to add insult to injury, a finding that there are no more "loopholes" for petitioner "to squeeze through." Under the circumstances presented in this case, we find the court's reliance on the waiver doctrine inappropriate. Because Kathy Potter's testimony bears directly on the petitioner's defense theory, justifiable self-defense, it necessarily implicates "the truth-determining process." *See* 42 Pa. C.S.A. § 9543(a)(2)(ii). Accordingly, we turn to the merits.

■ Our standard of review when evaluating a claim of ineffective assistance of counsel is well settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise. *Commonwealth v. Williams,* 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303,

1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue that is without basis. *Id.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Appellant must make the same showing of prejudice whether on direct appeal from a judgment of sentence or on appeal from denial of PCRA relief. *Commonwealth v. Kimball,* 453 Pa.Super. 193, 683 A.2d 666 (1996) (*en banc*), *allocatur granted,* 548 Pa. 615, 693 A.2d 587 (1997).

■ The failure to call a potential witness is not *per se* ineffectiveness absent some positive demonstration that the testimony would have been helpful to the defense. *Commonwealth v. Bulard,* 305 Pa.Super. 502, 510, 451 A.2d 760, 764 (1982). In order to establish a claim of ineffectiveness for failure to interview and/or present a witness, appellant must prove: (1) the existence and availability of the witness; (2) counsel's awareness of the witness or duty to know of the witness; (3) the witness' willingness and ability to appear on behalf of the defendant; and (4) the necessity of the proposed testimony in order to avoid prejudice. *Commonwealth v. Stanley,* 534 Pa. 297, 300, 632 A.2d 871, 872 (1993). *See also Commonwealth v. Morales,* 549 Pa. 400, 417–19, 701 A.2d 516, 525 (1997); *Commonwealth v. McKenna,* 498 Pa. 416, 446 A.2d 1274 (1982); *Commonwealth v. Gillespie,* 423 Pa.Super. 128, 620 A.2d 1143 (1993); *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483 (1987); *Commonwealth v. Polk,* 347 Pa.Super. 265, 500 A.2d 825 (1985).

■ Petitioner has established each of these factors. Kathy Potter's testimony, had it been presented at trial, would have rebutted the Commonwealth's evidence that the victim was a "gentle, family man." Various Commonwealth witnesses, including the decedent's wife, the decedent's brother and the decedent's brother-in-law, testified that the decedent was a quiet and peaceful family

man. Petitioner maintains that if Kathy Potter had been called to testify, she would have discredited the Commonwealth's portrayal of the victim. More importantly, Kathy Potter's testimony would have lent credence to petitioner's own testimony that the decedent was the aggressor, thereby reinforcing the defense theory. *See McKenna, supra.* As noted above, the critical factual issue in this case was whether the decedent was the aggressor; the critical legal issues were whether the evidence was sufficient to support a finding of malice and whether the Commonwealth had disproved self-defense beyond a reasonable doubt. Certainly, Kathy Potter's testimony would have clarified these issues, both for the jury and the reviewing courts.

As far back as 1884, our supreme court has permitted the introduction of character evidence to prove a decedent's violent propensities where self-defense is asserted and where there is an issue as to who was the aggressor. *See Alexander v. Commonwealth,* 105 Pa. 1, 9 (1884) ("With some doubt as to the sufficiency of proof that the deceased had assaulted the defendant, the Court admitted evidence of the reputation of the deceased for brutality, vindictiveness and violence. "). *See also Tiffany v. Commonwealth,* 121 Pa. 165, 15 A. 462 (1888) (If there is testimony tending to show that the defendant, on trial for murder, was assaulted by the deceased and the life of the deceased was taken in self-defense, evidence is admissible that such other person was reputed to be bad-tempered and quarrelsome). *See generally* I Wigmore, *Evidence* § 63 at 467. ("When the issue of self-defense is made in a trial for homicide, and thus a controversy arises whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action.").

<span style="background:black">     </span> More recently, our supreme court has held that in a homicide trial, where self-defense is asserted, the defendant may introduce evidence of the turbulent or dangerous character of the decedent. *See Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984). This type of character evidence is admissible on either of two grounds: 1) to corroborate the defendant's alleged knowl-

edge of the victim's violent character in an effort to show that the defendant reasonably believed that her life was in danger; and/or 2) **to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor.** *Id.; see also Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971) (testimony as to the victim's character is admissible to corroborate the defendant's alleged knowledge of the victim's violent character to corroborate the defendant's testimony that he had a reasonable belief his life was in danger and to prove the allegedly violent propensities of the victim to show he was the aggressor); *Cf. Commonwealth v. Romanic,* 311 Pa. 415, 166 A. 902 (1933) (single statement by victim that he killed a man is not relevant ·to establish violent character in effort to show victim was aggressor in encounter with defendant).

Here, Kathy Potter's testimony was admissible to prove that the victim was in fact the aggressor. *Clemmons, supra.* Carbone testified at trial that she was pulled into decedent's car, that she attempted to run from the decedent, and that he chased her and attacked her. Kathy Potter's testimony from the PCRA hearing indicated that Jerome Lint aggressively and persistently sought her attention. She stated that he "grabbed her arm" when she rebuffed him, that he had to be tempered by another patron at the bar, that he followed Potter to her car, and that he was not dissuaded, despite her clear rejection, until she pulled her service revolver out of her purse. Additionally, Kathy Potter testified that she had observed the decedent exhibit this "obnoxious" behavior on several occasions. Although it is within the jury's province to determine whether Carbone's testimony bore the "impress of candor," much of her testimony was corroborated by Commonwealth witnesses and forensic evidence. *See Tiffany, supra.* The jury, however, chose not to credit her claim of self-defense. Because the determination of who was the aggressor in this case was so critical to the petitioner's defense, petitioner should have been permitted to introduce decedent's assaultive and aggressive propensities through Kathy Potter's testimony. *See Commonwealth v. Dillon,* 528 Pa. 417, 598 A.2d 963 (1991). The fact that this testimony "fell

through the cracks" we attribute to ineffectiveness which, "in the circumstances of [this] case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

In sum, then, we conclude that under the circumstances of this case the PCRA court erred in finding waiver. After an exhaustive review of the record, the PCRA, and the relevant standards and applicable case law, we hold that (1) defense counsel was ineffective for failing to pursue the matter of Kathy Potter and/or failing to insure that the trial court ruled on the matter intended, *Stanley, supra;* (2) the PCRA court's finding that current counsel was "on notice" of the existence of Kathy Potter is not supported in the record, *Blackwell, supra;* (3) the PCRA court's determination that waiver precluded review of petitioner's ineffectiveness claim was error; and (4) trial counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S.A. § 9543(a)(2)(ii); *see Commonwealth v. Banks,* 540 Pa. 143, 148–49, 656 A.2d 467, 469–70 (1995); *see also Commonwealth v. Lark,* 548 Pa. 441, 698 A.2d 43 (1997); *Commonwealth v. Kimball,* 453 Pa.Super. at 198–200, 683 A.2d at 669 ("A determination that counsel's ineffectiveness would have resulted in a different outcome necessarily renders the truth-determining process unreliable."). Where, as here, trial counsel fails to pursue a critical witness who was available and willing to testify at trial, and whose testimony directly supports the theory of defense and thus impacts upon the truth-determining process, a finding of ineffectiveness on a collateral appeal is warranted. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). Without this crucial evidence, the truth-determining process is necessarily rendered unreliable. *See Kimball, supra.*

We do not reach this determination lightly. Because we believe that there is a reasonable likelihood that Kathy Potter's testimony could have altered the verdict, *see Commonwealth v. Romansky,* 702 A.2d 1064 (Pa.Super.1997), we must allow the truth-determin-

ing process another chance to prevail. We, therefore, reverse and remand for a new trial.

Reversed and remanded. Jurisdiction relinquished.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. The claim of ineffectiveness of trial counsel for failure to call Ms. Potter as a witness was waived and therefore cannot be raised in the instant PCRA petition.

Claims that could have been raised on direct appeal are deemed waived. *Commonwealth v. McGriff,* 432 Pa.Super. 467, 473, 638 A.2d 1032, 1035 (1994). Claims of ineffectiveness of counsel "must be raised at the earliest stage of the proceedings at which the allegedly ineffective counsel is no longer representing the claimant." *Commonwealth v. Griffin,* 537 Pa. 447, 454, 644 A.2d 1167, 1170 (1994). Therefore, allegations of ineffectiveness by trial counsel should have been raised on direct appeal.[1] Because the ineffectiveness of trial counsel was not raised as an issue on the direct appeal that claim is waived. If, however, trial counsel had represented appellant on direct appeal and failed to raise the issue of the uncalled witness, new counsel representing appellant on her PCRA petition could have alleged the ineffectiveness of that prior counsel.

The majority emphasizes that although the exception of "extraordinary circumstances" was removed from the language of the statute, ineffectiveness of counsel is still an exception to the waiver rule. The majority cites numerous cases, brought prior to the 1995 amendments, which recognize that ineffectiveness of counsel provides an exception to the waiver rule. In those cases, however, the alleged ineffectiveness of counsel occurred in the proceeding in which the otherwise waived issue should have been raised. In the instant case, waiver occurred in the direct appeal when appellate counsel failed to raise the issues of the uncalled witness and

1. Appellant's appellate counsel represents her on this PCRA petition.

the ineffectiveness of trial counsel. Therefore, an allegation of the ineffectiveness of appellate counsel would have provided an exception to the waiver rule. In the instant PCRA petition, however, the ineffectiveness alleged is that of the trial counsel, not of appellate counsel.

Even if the removal of the language excepting extraordinary circumstances from the waiver rule does not abolish the exception for ineffective counsel, appellant still does not fall within an exception to waiver under the PCRA. The ineffectiveness of trial counsel can in no way excuse the failure of appellate counsel to raise the issues of the uncalled witness or ineffectiveness of trial counsel on direct appeal.