J-S53037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                     :            PENNSYLVANIA
                                     :
          v.                        :
                                     :
                                   :
ANTHONY MCGRIFF              :
                                     :
          Appellant        :   No. 1507 EDA 2020

Appeal from the PCRA Order Entered July 27, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006669-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED APRIL 28, 2021**

Anthony McGriff (McGriff) appeals from the order entered in the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

**I.**

This case stems from McGriff's jury conviction of voluntary manslaughter and possession of an instrument of a crime (PIC)[1] for the May 2015 stabbing death of his younger brother, John McGriff (Decedent), in their

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2503(b) and 907(a).

shared residence. We recount the relevant factual and procedural background below.

**A.**

McGriff and Decedent resided together in an apartment owned by their older brother George McGriff (G.M.) on the 5800 block of Christian Street in Philadelphia. On May 3, 2015, at about 12:15 a.m., McGriff called G.M. and told him that he and Decedent had been in a fight. When G.M. arrived at the apartment, Decedent was unresponsive and bleeding. McGriff had left the residence and went to a corner store to buy a beer. G.M. called 911 and Decedent was pronounced dead at 1:00 a.m. Decedent had been stabbed twice in the chest, twice in the abdomen and once in the back. Blood was found throughout the home, including on the walls of the stairway, the bathtub and in McGriff's bedroom.

As police were processing the scene, McGriff returned to the apartment. He told police that he lived there, and that Decedent had been "acting weird." (N.T. Trial, 9/27/16, 149). McGriff had blood on his shirt, pants and sneakers and a cut on his thumb. McGriff was arrested and he gave a statement to police during which he recounted:

> Me and [Decedent were] fighting. I was in my bedroom and he was out all day celebrating his birthday. He came to my bedroom and was on the other side of the door and he was talking shit. He came in my room after he kicked in the door. It's the middle room to the left at the top of the steps. He was pushing me and kept pushing me against my belongings and that's when all hell broke loose. He said I was going to be with my [deceased] mom before the night was over. I turned and he tried to put a

belt around my neck and I got it and told him he was tripping. I flipped him and threw him on the floor. We was fighting on the bed and there was a knife on the table next to my bed that has always been there. The next thing I remember is that [Decedent] has the knife and he cuts my thumb and I flip him and he falls on the floor. Then I punched him on his side and chest and he just lays there and looks at me and I get up and leave.

(N.T. Trial, 9/27/16, at 254-55).

In response to questioning, McGriff denied ever having the knife during the altercation and posited regarding Decedent's multiple stab wounds that "Maybe when he fell, he fell on the knife." (*Id.* at 255). Police recovered a knife with a six-inch blade behind a door in McGriff's bedroom. Testing of the stain on the knife showed McGriff's DNA mixed with that of an individual for whom there was insufficient data for an identification.

McGriff did not testify at trial. However, in order to present a justification defense, his counsel admitted to the jury that he stabbed Decedent, despite his statement to the contrary to police.[2] Counsel argued during closing that McGriff stabbed Decedent in self-defense after Decedent brutally attacked him with a belt and escalated the struggle with a knife. (*See* N.T. Trial, 9/28/16, at 133-34).

_____

[2] McGriff was represented by two attorneys from the Defender Association of Philadelphia, Andrea Konow, *Esq*. and Roger Schrading, *Esq*. For ease of disposition, we refer to them collectively as "trial counsel" in this Memorandum.

At the conclusion of trial, the court instructed the jury extensively concerning the defense of justification, explaining in pertinent part:

Whereas here the defendant used deadly force against another person, and that's not disputed. For it to be justifiable three things must all be present. One, that the defendant must have reasonably believed that he was in immediate danger of death or serious bodily injury from the other person. And he reasonably believed that it was necessary then and there to use deadly force upon that person to protect himself. That's the first.

The second, the defendant must not have provoked the use of force against himself by engaging in conduct that showed it was his conscious object to cause death or serious bodily injury to the alleged victim. And third, the defendant must not have violated any duty to retreat. . . .

(*Id.* at 216).

**B.**

On September 29, 2016, the jury acquitted McGriff of first and third-degree murder, but convicted him of voluntary manslaughter[3] and PIC. On January 4, 2017, the trial court sentenced him to an aggregate term of not less than nine nor more than twenty years' incarceration, followed by five

---

[3] The Crimes Code defines this offense as follows:

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b).

- 4 -

years of probation. We affirmed McGriff's judgment of sentence on August 3, 2018, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on December 28, 2018. (*See Commonwealth v. McGriff*, 2018 WL 3688085 (Pa. Super. filed Aug. 3, 2018), *appeal denied*, 199 A.3d 881 (Pa. 2018)).

McGriff filed a timely *pro se* PCRA petition on April 12, 2019. Appointed counsel then filed an amended petition raising claims of ineffective assistance of trial counsel. *See* 42 Pa.C.S. § 9543(a)(2)(ii). On March 6, 2020, the PCRA court issued notice of its intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907(1). After considering McGriff's response to the Rule 907 Notice, the PCRA court entered an order dismissing the PCRA petition.[4] McGriff timely appealed and he and the PCRA court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).[5]

---

[4] We note that the PCRA court judge also presided over McGriff's jury trial and, therefore, had an intimate knowledge of the facts of this case.

[5] "Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error." *Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*) (citation omitted).

**II.**

On appeal, McGriff challenges the effectiveness of trial counsel[6] for two reasons. First, he contends that trial counsel failed to request a jury instruction regarding the castle doctrine. Second, McGriff contends that counsel should have introduced evidence of Decedent's violent character.

**A.**

McGriff first claims that trial counsel was ineffective for failing to request a charge directing the jury to consider the castle doctrine. Although the trial court instructed the jury regarding the defense of justification, McGriff maintains that a full castle doctrine charge was warranted, given that Decedent attacked him in the bedroom of his home, precipitating the stabbing.

The castle doctrine has its origin in common law and "is an evidentiary means by which a defendant may attempt to prove justification by self-defense." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1287 (Pa. Super.

---

[6] "In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Postie***, ***supra*** at 1023 (citation omitted). "The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** (citation omitted). "The petitioner bears the burden of proving all three prongs of the test." ***Id.*** (citation omitted). "Counsel cannot be found ineffective for failing to raise a baseless or meritless claim." ***Commonwealth v. Epps***, 240 A.3d 640, 645 (Pa. Super. 2020) (citation omitted).

2018), *appeal denied*, 217 A.3d 180 (Pa. 2019). "The ideological foundation for the castle doctrine is the belief that a person's home is his castle and that one should not be required to retreat from his sanctum." ***Commonwealth v. Williams***, 241 A.3d 1094, 1110 (Pa. Super. 2020) (citation omitted). The doctrine was codified in Pennsylvania at 18 Pa.C.S. § 505 and reads in pertinent part:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person**.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.** —

\* \* \*

(2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if **both** of the following conditions exist:

(i) The person against whom the force is used is in the process of **unlawfully** and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

(2.2) The presumption set forth in paragraph (2.1) does not apply if: (i) **the person against whom the force is used has**

**the right to be in or is a lawful resident of the dwelling, residence** or vehicle, such as an owner or lessee[.]

18 Pa.C.S. § 505(a), (b)(2.1), (2.2)(i) (emphases added).

As can be seen, both subsections 2.1(i) and (ii) must be met for the castle doctrine to apply. Subsection 2.1(i) prescribes: the victim is in the process of unlawfully and forcefully entering or has unlawfully and forcefully entered and is present within a dwelling, residence, or occupied vehicle. Subsection 2.1(ii) then provides that the defendant must have known, or had reason to believe, that the unlawful and forceful entry or act is occurring. *See id.*; *Cannavo*, *supra* at 1287–88. Subsection 2.2 specifically prohibits application of the presumption under circumstances where the victim is a lawful resident of the dwelling.

It is plain from the record that Decedent was killed in his own residence and that the brothers shared the family home – he was a lawful resident of the dwelling. Because Decedent was not unlawfully entering the apartment, the statutory requirement for invoking the castle doctrine was not met. Because McGriff was not entitled to a jury charge on the castle doctrine, trial counsel was not ineffective for failing to request this instruction.

**B.**

McGriff next challenges the effectiveness of trial counsel for failing to present evidence of Decedent's violent character, resulting in prejudice necessitating a new trial. McGriff points to Decedent's arrest for aggravated assault in December 2013 for which he was admitted into an accelerated

rehabilitative disposition program (ARD). McGriff maintains that this evidence would have supported his self-defense claims that he reasonably believed his life was in danger and that Decedent was the aggressor.

In a homicide trial where self-defense is asserted, the defendant may introduce evidence of the turbulent or dangerous character of the decedent to corroborate the defendant's alleged knowledge of the victim's violent character in an effort to show that the defendant reasonably believed that his life was in danger and/or to establish the allegedly violent propensities of the victim to show that he was the aggressor. *See Commonwealth v. Carbone*, 707 A.2d 1145, 1154 (Pa. Super. 1998); *see also Commonwealth v. Darby*, 373 A.2d 1073, 1074-75 (Pa. 1977) (concluding defendant claiming self-defense should have been permitted to testify to victim's prior arrest for violent crimes and victim's arrest record should have been admitted to corroborate defendant's testimony that he believed his life was in danger).

In this case, the PCRA court noted that it may have admitted evidence concerning Decedent's arrest for aggravated assault if trial counsel had attempted to offer it into evidence. However, it went to find that McGriff failed to demonstrate reasonable probability that the outcome of the proceedings would have been different even if the evidence had been offered, reasoning:

> Defendant was not denied effective assistance of counsel since there clearly is not a reasonable probability that the result of the proceeding would have been different if evidence of the arrest had been presented to the jury. The Superior Court's analysis of the evidence in rejecting defendant's sufficiency claim on direct appeal demonstrates the strength of the

Commonwealth's proof to refute defendant's contention that he reasonably believed that it was necessary to kill his brother:

[McGriff's] actions following the altercation support an inference that his actions were not entirely justified. [He] failed to contact police, initially claimed to have nothing to do with [Decedent's death], and denied stabbing [Decedent] up until the point of trial. Additionally, [McGriff's] own description of the fight brings into question the reasonableness of [his] use of force. While [McGriff] informed Detective[s] that [Decedent] attacked him with both a belt and a knife, he clearly indicated that he was able to overpower [Decedent] when confronted with these items. Yet . . . [Decedent] was stabbed five times — twice in the chest, and once in the abdomen, pelvis, and middle of the back.

[(**McGriff**, **supra** at *6)].

Hence the jurors heard defendant, in his own words, describe how he repeatedly overpowered the Decedent, and then learned from the medical examiner that defendant had inflicted one of the five stab wounds squarely in the decedent's back. The jurors also heard that defendant's own injuries consisted of a superficial laceration of his thumb. They heard defendant deny that he had ever stabbed the Decedent, claiming that the Decedent must have fallen on the knife. They heard that the defendant never called 911 after the killing, and instead walked to a corner store and bought a beer, and that while he spoke with police before being arrested, he never claimed that he acted in self-defense until after his arrest. All of this, and the other evidence in the case, soundingly refuted defendant's claim that he acted reasonably when he killed the Decedent. Accordingly, the evidence of an arrest resulting in an ARD disposition would not have likely led to a different result.

(PCRA Court Opinion, 9/24/20, at 7-8) (most citations omitted).

Because we agree with the PCRA court that, in light of the evidence

against him, McGriff failed to show that he was prejudiced because the result

- 10 -

of the proceeding would not have been different had such evidence been presented, his ineffectiveness claim does not merit relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/28/2021*